## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | HON. JOSEPH A. DICKSON |
| | : | |
| v. | : | Mag. No. 18-6617 (JAD) |
| | : | |
| JEREMY HARE | : | **CRIMINAL COMPLAINT** |

I, Keith Melinson, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

### SEE ATTACHMENT A

In violation of Title 18, United States Code, Section 1343.

I further state that I am a Special Agent with the Federal Bureau of Investigation, and that this complaint is based on the following facts:

### SEE ATTACHMENT B

continued on the attached page and made a part hereof.

Keith Melinson, Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence,

June 20, 2018                                    at Newark, New Jersey

HONORABLE JOSEPH A. DICKSON
UNITED STATES MAGISTRATE JUDGE        Signature of Judicial Officer

## ATTACHMENT A

From in or about September 2016, through in or about August 2017, in the District of New Jersey and elsewhere, defendant

## JEREMY HARE

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud the Victim Company, as defined below, and to obtain money and property from the Victim Company by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, including wire transfers sent on behalf of the Victim Company to the State of New Jersey, Department of Treasury, in violation of Title 18, United States Code, Section 1343.

ATTACHMENT B

     I, Keith Melinson, am a Special Agent with the Federal Bureau of Investigation.   I am familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and other evidence.   Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation.   Where statements of others are related herein, they are related in substance and in part unless otherwise indicated.   Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

     1.     At all times relevant to this Complaint:

     a.  Defendant JEREMY HARE ("HARE") was the President and Managing Member of Apollo Search Partners, LLC ("Apollo").   Apollo was a staffing agency with an office in New Jersey.

     b.  The "Victim Company" is a member-managed limited liability company with its headquarters in California.   The Victim Company is a commercial finance lender.   As such, the Victim Company offers, among other things, funding to entities to help those entities meet payroll and other obligations.   In such a situation, the Victim Company will transfer funds to the entity's bank account.   In return, the client will assign some of its assets, at times accounts receivable, to the Victim Company.   The amount the Victim Company funds is a percentage of the assets the client assigns to the Victim Company.   Through this process, the client will be able to meet its short term financing needs and the Victim Company will realize a profit on its investment.

     2.     On November 22, 2016, a representative of the Victim Company met with defendant HARE.   During the meeting, defendant HARE and the representative discussed the Victim Company entering into a funding agreement with Apollo.

     3.     On February 10, 2017, defendant HARE told a representative of the Victim Company that Apollo was interested in moving forward with a funding agreement with the Victim Company.

     4.     On March 2, 2017, the Victim Company sent a funding application document to defendant HARE.

5.     On June 13, 2017, defendant HARE told a representative of the Victim Company that he wanted the Victim Company to provide funding to Apollo.

6.     On June 13, 2017, Apollo submitted an application to the Victim Company.   The application stated that: (a) Apollo's business address was located in New Jersey; (b) defendant HARE was the sole principal of and point of contact for Apollo; and (c) Apollo had $3,000,000 in annual billing.

7.     On June 16, 2017, the Victim Company and defendant HARE entered into a financing agreement ("the Agreement").   In the Agreement: (a) the Victim Company agreed to provide funding to Apollo; (b) Apollo agreed to provide to the Victim Company, for each approved client, invoices and supporting time cards for each person Apollo staffed with the client; (c) the parties agreed that all of Apollo's invoices concerning the approved clients would designate the Victim Company as the named payee and include instructions for the client to submit payment to the Victim Company.   Jeremy Hare signed the Agreement on behalf of Apollo.

8.     On or about June 21, 2017, and in light of the Agreement, a company hired by the Victim Company (the "Third Party") filed a UCC Financing Statement (the "Statement") on behalf of the Victim Company with the State of New Jersey, Department of the Treasury.   The Victim Company caused the statement to be filed in order to encumber certain Apollo assets.

9.     On or about June 21, 2017, the State of New Jersey, Department of Treasury, provided the Victim Company with a receipt concerning the filing of the Statement. This receipt was sent by a person in New Jersey through a server in New Jersey to the Third Party.

10.     Between June 20, 2017, and August 15, 2017, Hare submitted more than 15 invoices to the Victim Company.   The investigation to date has revealed that invoices Apollo submitted to the Victim Company concerning one of the approved clients ("Client 1") were fraudulent, in that: (a) Apollo never staffed most of the individuals listed on the invoices; (b) the hours worked listed on the invoices were false; and (c) the time information sheets submitted with the invoices were fraudulent in that most if not all of the time was never performed.

11.     In response to the invoices defendant HARE submitted, and pursuant to the Agreement, the Victim Company provided funding of approximately $400,000 to Apollo between June and August 2017.

12.     As the invoices for Client 1 became due, the Victim Company did not receive payment from Client 1.   On at least two occasions in August 2017 defendant HARE told a representative of the Victim Company, in substance and in part, that the payments were being processed and that the payments were forthcoming.

13.     To date, the Victim Company has not received any money from Apollo concerning Client 1.

14.     A representative of Client 1 stated that: (a) Client 1 did retain Apollo to supply personnel to Client 1; (b) between June 1, 2017 and August 31, 2017, Apollo staffed three individuals with Client 1; (c) Apollo submitted invoices for the services to Client 1 for more than $400,000 for the time period of July 1, 2017, to July 31, 2017; and (d) the invoices were fraudulent in that most of the individuals listed on the invoices did not perform any services at Client 1 between June 1, 2017 and August 31, 2017.

15.     An individual ("Individual 1") told law enforcement that Apollo placed him/her at Client 1 between October 2016 and December 2016. Individual 1 further stated that he/she ceased working at Client 1 in December 2016 and never worked at Client 1 in 2017.   Nonetheless, numerous Apollo invoices provided to the Victim Company fraudulently stated that Individual 1 worked at Client 1 between June and August 2017.

16.     An individual ("Individual 2") told law enforcement that Apollo placed him/her at Client 1 between October 2016 and December 2016. Individual 2 further stated that he/she ceased working at Client 1 in December 2016 and never worked at Client 1 in 2017.   Nonetheless, numerous Apollo invoices provided to the Victim Company fraudulently state that Individual 2 worked at Client 1 between June and August 2017.

17.     Bank records for Apollo's corporate bank account demonstrate that defendant HARE used the majority of funds in the account for his personal expenses, including clothing, repeatedly eating out at restaurants, and his gym membership.