

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

*970 Broad Street, 7th floor*　　　　　　　　　　　　　　　*973-645-2700*
*Newark, New Jersey 07102*

January 13, 2021

The Honorable Renée Marie Bumb
United States District Judge
United States District Court
Mitchell H. Cohen U.S. Courthouse
One John P. Gerry Plaza
4th & Cooper Streets
Camden, NJ 08101

      Re:   United States v. Jeremy Hare
              Crim. No. 18-588 (RMB)

Dear Judge Bumb:

    Please accept this letter brief in lieu of a more formal response to the Court's January 4, 2021 Text Order. The Text Order directs the United States "to provide a status update regarding the efforts being taken by the Bureau of Prisons to address the apparent COVID-19 outbreak at FCI Fort Dix."

    The attached Declaration of James Resier ("Declaration") (Exhibit A), dated January 12, 2021, describes efforts that the Bureau of Prisons ("BOP") and FCI Fort Dix have taken to address the COVID-19 outbreak.

1. **Mitigating Efforts at FCI Fort Dix**

First, the baseline: As the Government described in its previous submission, in August 2020 the BOP implemented Phase 9 of its Action Plan, Declaration ¶ 3, which instituted the following measures:

- Only limited group gathering is afforded, with attention to social distancing to the extent possible, to facilitate commissary, laundry, showers, telephone, and computer access.

- All staff and inmates are issued an appropriate face covering and strongly encouraged to wear it in public areas when social distancing cannot be achieved.

- Newly admitted inmates, including transfers from another BOP facility, are screened and tested for COVID-19 exposure and symptoms. The newly admitted inmates are placed in a 14-day quarantine and must test negative prior to entering the general population. Symptomatic or positive inmates are placed in isolation until they test negative for COVID-19 or are cleared by medical staff as meeting CDC criteria for release from isolation.

- In areas with sustained community transmission, such as FCI Fort Dix, all staff are screened for symptoms. Staff registering a temperature of 100.4 degrees Fahrenheit or higher are barred from the facility on that basis alone.

- Contractor access to BOP facilities is restricted to only those performing essential services (*e.g.*, medical or mental health care, religious, etc.) or those who perform necessary maintenance on essential systems. All volunteer visits are suspended absent authorization by the Deputy Director of BOP. Any contractor or volunteer who requires access is screened for symptoms and risk factors.

Declaration ¶ 3.

Next, FCI Fort Dix took the following steps pursuant and in addition to the Phase 9 mandate. For instance:

- FCI Fort Dix quarantines all incoming inmates upon arrival at the facility and tests inmates when they enter and exit quarantine. Declaration ¶ 6

- FCI Fort Dix houses inmates who test positive for COVID-19 in an isolation unit and quarantines the remaining inmates from that housing unit an a quarantine location. Declaration ¶ 8.

- Inmates in quarantine or isolation do not leave their housing unit and meals and other items, such as commissary, are brought to the them. Declaration ¶ 10.

- Staff entering any quarantine/isolation unit wear Personal Protective Equipment ("PPE"), including an N-95 mask, a face shield or goggles, and gloves. Declaration ¶ 11.

In October 2020, the Warden also:

- cancelled visitation;

- curtailed inmate movement;

- reduced numbers of inmates for job functions; and

- ordered that inmates may move solely with others in their housing unit.

Declaration ¶ 17.

On or about November 16, 2020, FCI Fort Dix commenced volunteer staff COVID-19 testing for asymptomatic staff. Declaration ¶ 15. In addition, symptomatic staff are prohibited from entering FCI Fort Dix and are encouraged to consult with their medical provider. Declaration¶ 15.

On October 23, 2020, the Warden sought a moratorium to stop incoming and outgoing inmate movement, which was granted through November 23, 2020. Declaration ¶ 18.

3

In December 2020, the Warden sought a moratorium to stop incoming and outgoing inmate movement, which was granted. Declaration ¶ 19. On January 4, 2021, the Warden sought an extension to the December movement moratorium, which was granted through January 26, 2021. Declaration ¶ 19.

The Warden emphasizes strict cleaning procedures and the institution's duty officer monitors and reports on cleaning efforts. Declaration ¶ 20.

FCI Fort Dix expects to receive the COVID-19 vaccine on or about January 19, 2021. Declaration ¶ 21. It will then be distributed in accordance with the BOP's Clinical Guidance. Declaration ¶ 21.

Possibly because of the above steps, although the number of COVID-19 positive inmates was much higher in late December 2020 and early January 2021, as of January 11, 2021, FCI Fort Dix "has a total of 183 COVID-19 positive inmates." Declaration ¶ 12. The Government recognizes that this remains a significant number.

### 2. The Court Should Deny Hare's Compassionate Release Motion

Despite the intervening spike in positive COVID-19 cases at FCI Fort Dix, the Court should deny Hare's motion. Hare is serving a thirty-six-month sentence for wire fraud. Declaration ¶ 22. He reported on June 4, 2019, Declaration ¶ 22, and thus has barely completed fifty percent of his sentence. His projected release date is a little more than one year away. *See* Declaration ¶ 22 (projected release date of February 1, 2022).

Further, Hare was disciplined once in the past year for illegally possessing a cellular telephone while incarcerated. *See*, *Discipline Hearing Officer Report* ("Report"), Exhibit 3 to the Government's Response to Hare's Third Motion to Reduce His Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), ECF Docket No. 49. As the Report states:

> The action/behavior on the part of [p]ossessing a hazardous tool significantly threatens the health, safety, and welfare of not only himself, but of all persons, whether another inmate or any other person, who are involved in the act. This will not be tolerated. Past evidence has shown that disruptive conduct has led to serious damage to the institution, as well as serious injury to staff and inmates involved and not involved in the disruptive conduct. The sanctions imposed by the DHO were taken to inform the inmate

4

> that he will be held responsible for his actions/behaviors at all times.

Report, p. 3. As a result, Hare lost 41 days of good conduct time and visiting privileges for one year and was fined $500.00. Report, p. 3.

Hare has been lodged at FCI Fort Dix's West Compound, Unit 5811, since December 7, 2020. Declaration ¶ 23. No individuals in Unit 5811 are currently positive and none have tested positive since December 7, 2020. *See* Declaration ¶¶ 13, 23. Hare was last tested for COVID-19 on December 1, 2020, and tested negative on that date.

Hare's situation is distinguishable from the defendants in cases addressed in his recent *pro se* filing[1] - two briefs submitted in a separate matter in the Southern District of Florida. For instance, in *United States v. Elliott*, 2020 WL 6874869, *1 (D.N.J. Nov. 23, 2020), the defendant had served approximately 75% of his sentence and was scheduled to be released to a halfway house just one month after the Court's decision. Similarly, in *United States v. Jansen*, 2020 WL 6946504, *1 (S.D. Ind. November 25, 2020), the defendant had served over 75% of his sentence, was obese, and had a clear disciplinary record. The defendant in *United States v. Staats*, 2020 WL 6888224, *1 (E.D. Pa. November 24, 2000), had numerous medical conditions, had also served over 75% of his sentence, and had not committed any disciplinary infractions. In *United States v. Smith*, 2020 WL 6822831, *1 (E.D. Mich. Nov. 20, 2020), the defendant was obese and had diabetes. The Court found the defendant was "particularly vulnerable to COVID-19" and had an increased "risk for severe illness or death if he contracts the virus." *Id. at *2*. Lastly, in *United States v. Vega*, 2020 WL 7060153, *1-2 (E.D.N.Y December 2, 2020), the defendant was 65 years old and had been incarcerated for 32 years (with a projected release dated in 2028, thus having served approximately 80% of his sentence). In addition, the defendant was designated as a "Chronic Care" inmate. *Vega*, 2020 WL 7060153 * 2

In the present matter, Hare lacks a co-morbidity that makes him a high risk individual susceptible to contraction of or complications from COVID-19. He would serve just over half of his sentence, representing a substantial variance from the advisory guidelines range, if the Court grants his motion. Compassionate release would also be inconsistent with the sentencing factors

---

[1] Of course, the Court need not consider Hare's recent *pro se* filings as the Court has appointed him counsel, and there is no demonstrated basis for hybrid representation, which is generally disfavored.

5

in 18 U.S.C § 3553(a), especially in light of Hare's recent infraction while in custody. Further, the victim, upon whom Hare inflicted both severe economic and emotional harm, opposes the motion.

*   *   *

In sum, for the reasons set forth herein and in the Government's previous submissions, the Court should deny Hare's motion for compassionate release.

Thank you for your consideration.

Respectfully submitted,

RACHAEL A. HONIG<br>Acting United States Attorney

By: Andrew Kogan<br>Assistant U.S. Attorney

cc: Linda Foster, Esq.
*counsel for Jeremy Hare*