UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                   :
JEREMY HARE,                       :
                                   :   Civ. No. 20-14093 (RMB)
            Petitioner             :
                                   :
        v.                         :   **OPINION APPLIES TO ALL ACTIONS**
                                   :
WARDEN ORTIZ,                      :
                                   :
            Respondent             :
_____          :


_____
                                   :
UNITED STATES OF AMERICA,          :
                                   :   Crim. Action No. 18-588-1(RMB)
            Plaintiff              :
                                   :
        v.                         :
                                   :
JEREMY HARE,                       :
                                   :
            Defendant              :
_____          :


BUMB, United States District Judge

     This matter comes before the Court upon Jeremy Hare's
("Petitioner") motion for reduced sentence under 18 U.S.C. §
3582(c)(1)(A)(i) (Dkt. No. 40), and his pro se petition for writ
of habeas corpus under 28 U.S.C. § 2241 (Pet., Dkt. No. 1),
Respondent's answer (Dkt. No. 9), and subsequent filings of the

parties.[1] Petitioner, a federal inmate at FCI Fort Dix, alleges that the Federal Bureau of Prisons ("BOP") has failed to apply his 255 days of earned "Time Credits" (or "Earned Time Credits") under the First Step Act ("FSA"), 18 U.S.C. § 3632(d)(4)(A), and application of those credits would result in his earlier release from BOP custody. (Pet., Dkt. No. 1, Petr's Aff., Dkt. No. 1-2.)[2]

For the reasons set forth below, the Court will deny Petitioner's motion for reduction of sentence under 18 U.S.C. § 3582(c)(1)(A)(i), and reserve ruling on his petition for writ of habeas corpus under 28 U.S.C. § 2241 for immediate release pending supplementation of the record.

I.  BACKGROUND

On April 30, 2019, Petitioner was sentenced to 36 months in prison upon his guilty plea to one count of wire fraud. United

---

[1] Additional filings include Petitioner's reply brief, (Reply Brief, Dkt. No. 10), Respondent's Surreply brief (Surreply, Dkt. No. 14), Petr's letters in response to the Surreply brief (Petr's Letters, Dkt. Nos. 15-16), Respondent's letter for correction (Respondent's Letter, Dkt. No. 17), Petitioner's letter in response to Respondent's letter for correction (Petr's Letter, Dkt. No. 18), and supplemental exhibit (Suppl. Ex., Dkt. No. 19.)

[2] Jurisdiction is proper under 28 U.S.C. § 2241 because Petitioner challenges the duration of his confinement. Leamver v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002). Pursuant to 18 U.S.C. § 3624(g)(1)(A), a prisoner who "has earned time credits under the risk and needs assessment system … in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment" may be released to a residential reentry center ("RRC"), home confinement or supervised release, subject to the provisions under § 3624(g)(1)(B-D) and (g)(2, 3).

States v. Hare, 1:18-cr-00588-RMB-1 (D.N.J. May 6, 2019) (Judgment, Dkt. No. 22.) Petitioner's projected release date, assuming application of good time credit, is February 1, 2022. (Declaration of Corrie Dobovich ("Dobovich Decl."), Ex. 1, Dkt. No. 9-3 at 2.)[3] On January 3, 2020, Petitioner's unit team recommended that he receive a 365-day period of RRC placement. (Pet., Ex. 2, Dkt. No. 1-1 at 6.) However, in a "Program Review" on January 21, 2020, Petitioner was recommended for a 91 to 120-day placement in a RRC or home confinement. (Declaration of Christopher Palm ("Palm Decl.") Ex. 6, Dkt. No. 9-5 at 72.)

A.    The First Step Act's Evidence-based Recidivism Reduction Programming and Earned Time Credits

The First Step Act, Pub. L. No. 115-015, 132 Stat. 015 (2018), effective December 21, 2018, offers prisoners an opportunity to earn Time Credits applicable to their periods of RRC placement, home confinement or supervised release, by participating in certain evidence-based recidivism reduction ("EBRR") programs and productive activities ("PAs"). 18 U.S.C. § 3621(h), 18 U.S.C. § 3632(d)(4). In compliance with the First Step Act ("FSA"), on July 19, 2019, the BOP developed and released a risk and needs assessment system, titled "Prisoner Assessment Tool Targeting Estimated Risk and Needs" ("PATTERN"). See 18 U.S.C. § 3632(a);

---

[3] Page citations to the Docket ("Dkt.") following the Docket entry number reflect the page assigned by the Court's Case Management Electronic Case Filing System ("CM/ECF").

(Answer, Dkt. No. 9 at 7, citing Herring v. Joseph, No. 20-249, 2020 WL 3671375, at *3 (N.D. Fla. June 22, 2020), report and recommendation adopted in part, 2020 WL 3642706 (N.D. Fla. July 6, 2020.)) The risk and needs assessment system "shall be used" … "to determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly…." 18 U.S.C.A. § 3632(a)(3). "Not later than 180 days" after release of the risk and needs assessment system … the Director of the Bureau of Prisons shall, (A) implement and complete the initial intake risk and needs assessment for each prisoner … and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination." 18 U.S.C. § 3621(h)(1)(A).

Prisoners earn Time Credits for completion of these programs pursuant to 18 U.S.C. § 3632(d)(4). Time Credits "shall be applied toward time in prerelease custody or supervised release" and "[t]he Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release."[4] In Goodman, this Court rejected the BOP's statutory interpretation that would delay application of Time Credits to all prisoners "during the phase-in program until January 15, 2022, the final date when BOP must complete the phase-

---

[4] See supra n. 2.

4

in with respect to 'all prisoners.'" <u>Goodman v. Ortiz</u>, No. CV 20-
7582 (RMB), 2020 WL 5015613, at *6 (D.N.J. Aug. 25, 2020) (citing
18 U.S.C. § 3621(h)(2)(A)).

A.   <u>Relief Sought by Petitioner</u>

1.   *Motion for reduction of sentence under 18 U.S.C. §
     3582(c)(1)(A)*

The FSA modified 18 U.S.C. § 3582(c)(1)(A)(i) by permitting
prisoners to seek a reduction in their sentences for "extraordinary
and compelling reasons," if the BOP first denied a request to make
such motion on the prisoner's behalf. <u>United States v. Raia</u>,  954
F.3d 594, 595 (3d Cir. 2020). Petitioner requests modification of
his sentence based on his claim of entitlement to Time Credits
under the FSA. Given that there is another avenue for the relief
sought by Petitioner, and  that Time Credits under the FSA are to
be applied toward RRC time, home confinement or supervised release,
and  not  the  term  of  imprisonment,  the  Court  finds  that
extraordinary  and  compelling  reasons  do  not  exist  to  reduce
Petitioner's  sentence  under  §  3582(c)(1)(A)(i).  Therefore,  the
Court  denies  Petitioner's  motion  under  18  U.S.C.  §
3582(c)(1)(A)(i). <u>United States v. Hare</u>, Crim. Action No. 18-588-
1(RMB) (D.N.J.) (Dkt. No. 40.)

2.   *Habeas relief under 28 U.S.C. § 2241*

Petitioner claims that if all Time Credits he is due under
the FSA were applied, he would be immediately eligible for release

to a RRC or home confinement. According to Petitioner, his case
manager performed an initial needs assessment and found Petitioner
to be at low risk of recidivism, thus eligible for EBRR programs
under 18 U.S.C. § 3621(a)(1). (Mem. in Supp. of Pet., Dkt. No. 1-
2 at 5.) Petitioner seeks application of 255 days of earned Time
Credits for his work as a P.M. Cook and for participation in 26
programs and activities, which he asserts were confirmed by his
case manager in a unit team meeting on January 3, 2020. (Id.)
Specifically, Petitioner contends that he

> should have earned 10 days of credit for every
> 30 days of successful participation in
> evidence-based recidivism (EBR) reduction
> programming and shall earn an additional 5
> days of time credit for every 30 days of
> successful participation in (EBR)
> activities[,] [s]tarting on December 18, 2018
> when the First Step Act was enacted.

(Id. at 6.)

B.   Respondent's Opposition to Habeas Relief

Respondent submits that the BOP has approved certain EBRR
programs and PAs that qualify for Time Credits under the FSA. (Palm
Decl. ¶7, Dkt. No. 9-4; Ex. 2 at 4-42, Dkt. No. 9-5 at 16-61.)
Time Credits are earned only when an inmate successfully completes
one of the BOP-approved EBRR programs or PAs related to one of the
particular needs assigned to that inmate. (Palm Decl. ¶7, Dkt. No.
9-4.) An EBRR program or PA is completed for purposes of earning

Time Credits as set forth in the <u>First Step Act Approved Programs</u> <u>Guide</u>. (Palm Decl., Ex. 2 at 4-42, Dkt. No. 9-5 at 16-61.)

On December 2, 2019, BOP staff found Petitioner eligible to earn Time Credits under 18 U.S.C. § 3632(d). (Palm Decl. ¶3, Dkt. No. 9-4; Ex. 3 at 1, Dkt. No. 9-5 at 63.) Thus, on December 11, 2019, BOP staff conducted Petitioner's risk and needs assessment and determined that he had a minimum risk for recidivism.[5] (Palm Decl. ¶4, Dkt. No. 9-4; Ex. 3 at 1, Dkt. No. 9-5 at 63.) Petitioner was found to have a need for EBRR programs and PAs in the categories of anger/hostility, work, medical, recreation/leisure/fitness, and parenting. (Palm Decl. ¶6, Dkt. No. 9-4; Ex. 4 at 1-2, Dkt. No. 9-5 at 65-66.) In June 2020, Petitioner was placed on a wait-list for a program to meet his need in the anger/hostility category, but he had not commenced such a program as of October 28, 2020. (Palm Decl. ¶7, Dkt. No. 9-4.) The BOP recommended that Petitioner take a vocational course to meet his need in the work category, but he was not enrolled in vocational course as of October 28, 2020. (<u>Id.</u>, Ex. 6 at 3, Dkt. No. 9-5 at 72.) Petitioner completed the first phase of the recommended parenting program and was participating in the second phase, completion of which is required to earn Time Credits. (Palm Decl. ¶7, Dkt. No. 9-4; Ex. 5 at 1,

_____

[5] On May 25, 2020, staff reassessed Petitioner's risk level and determined that he had increased to a low risk of recidivism. (Palm Decl. ¶4, Ex. 3 at 1, Dkt. No. 9-5 at 63.)

Dkt. No. 9-5 at 68.) Although Respondent initially contended that the Threshold program Petitioner completed was not an approved course for earning Time Credits, Respondent has acknowledged that Petitioner completed a 72-hour Threshold Program that appears in the First Step Act Approved Programs Guide, and may qualify for Time Credits for parenting. (Letter, Dkt. No. 17; Supplemental Declaration of Christopher Palm ("Suppl. Palm Decl." ¶¶4-6, Dkt. No. 17-1.)

More to the point, Respondent argues that because Petitioner was assessed with having a need for EBRR programs or PAs in substance abuse and education prior to *implementation* of the FSA but not thereafter, he is not entitled to Time Credits. (Surreply, Dkt No. 14 at 2 n. 1.) In other words, the BOP has interpreted the FSA to permit prisoners to earn Time Credits "for EBRR programming and PAs that were *assigned and completed* after January 15, 2020" for the deadline. (Id. (emphasis added) citing 85 Fed. Reg. at 75272 (proposed regulation 28 C.F.R. § 523.42(d)(1)). Respondent relies upon Congress' dictate that inmates may not earn Time Credits for successful completion of EBRR programming and productive activities completed "prior to the enactment of this subchapter." (Id., citing 18 U.S.C. § 3632(d)(4)(B), 18 U.S.C. § 3632(a), 18 U.S.C. § 3621(h)(1): Subchapter D establishes July 19, 2019 as the deadline for the development of the risk and needs assessment system and Congress gave the BOP until January 15, 2020,

8

to begin to implement the system). Therefore, Respondent argues subchapter D was "enacted" on January 15, 2020.

Thus, because Petitioner completed the non-residential drug program prior to January 15, 2020, he is not entitled to Time Credits for completion of this program, according to Respondent. (Surreply, Dkt. No. 14 at 2, citing Palm Decl., Ex. 4 (Inmate Profile) at 1 ("NRES DRUG TMT/COMPLETE 12/11/2019.")) With the exception of the Parenting and Threshold programs, none of the other courses Petitioner participated in are listed by the BOP as approved EBRR programs and Petitioner is therefore not entitled to Time Credits. (Surreply at 2, Dkt. No. 14 at 2, comparing Petitioner's Ex. 1 (Dkt. No. 1-1) with Palm Decl., Ex. 2 (Dkt. No. 9-4.))

Respondent also addresses the calculation of Time Credits to be awarded upon completion of EBRR programs and PAs under the FSA. Petitioner seeks 10 days of Time Credit for every 30 days in which he participated in an EBRR program or PA, regardless of the number of hours of participation in each day. Petitioner disagrees with the BOP's interpretation of "a day of successful participation" as eight hours of participation in an EBRR program or PA, with 240 hours of participation required to earn ten Time Credits under the FSA (Letter, Dkt. No. 18 at 1-2), contending that the FSA says nothing about "hours" and refers only to days. (Id.) The FSA provides that an inmate will receive 10 days of Time Credits for

9

every 30 days of successful participation in an EBBR program or
PA. (Id., citing 18 U.S.C. § 3632(d)(4)(A)(i)). The BOP, however,
as noted interprets "a day of successful participation" to mean
one 8-hour period of programming, an average workday. (Answer,
Dkt. No. 9 at 19, citing 85 Fed. Reg. at 75272 (proposed regulation
28 C.F.R. § 523.42(b), (c)). Respondent submits this is a
reasonable interpretation of the FSA which is entitled to deference
by the Court.

C.     Petitioner's Opposition to the BOP's Statutory
       Interpretation

Petitioner maintains that his completion of a non-residential
drug program, criminal thinking program, and his work with an AA
sponsor each week, entitle him to Time Credits because they are
approved EBRR programs and productive activities under the FSA.
(Letter, Dkt. No. 15 at 2.) Petitioner claims that he has a need
for substance abuse programs based on the supervised release
portion of his sentence, which requires him to go to drug and
alcohol rehabilitation. (Id.) Petitioner also notes that on
December 2, 2019, his unit team found him eligible to earn FSA
Time Credits and told him to work and participate in vocational
training, which he did after January 15, 2020. (Letter, Dkt. No.
15 at 3.)

II.  DISCUSSION

A.    Exhaustion of Administrative Remedies

10

There is an administrative remedy exhaustion requirement applicable to petitions for writ of habeas corpus under 28 U.S.C. § 2241, but there are exceptions to the requirement. See Cerverizzo v. Yost, 380 F. App'x 115, 116 (3d Cir. 2010) (citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 239 n. 2 (3d Cir. 2005); Schandelmeier v. Cunningham, 819 F.2d 52, 53 (3d Cir. 1986); Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (Roth, J., concurring)). The parties agree that Petitioner did not exhaust the final level of the BOP administrative remedy program prior to filing his habeas petition. This Court, however, finds that this case presents a dispute of statutory construction,[6] which is exempt from the exhaustion requirement and therefore rejects Respondent's position that this case is not ripe for review. See Coleman v. U.S. Parole Comm'n, 644 F. App'x 159, 162 (3d Cir. 2016) ("exhaustion is not required with regard to claims which turn only

_____

[6] Petitioner filed the present habeas petition on October 8, 2020. (Pet., Dkt. No. 1.) On October 5, 2020, Petitioner received a response to his BP-8 informal resolution attempt, which stated "as per the Legal dept. the credits will not be applied at this time. The statute gives the BOP two years to apply them." (Dobovich Decl., Ex. 2, Dkt. No. 9-3 at 8.) Inexplicably, the BOP's statutory interpretation contradicts this Court's finding in Goodman v. Ortiz, No. CV 20-7582 (RMB), 2020 WL 5015613 (D.N.J. Aug. 25, 2020). The Court further notes that Petitioner later received a similar response from the Warden on his administrative remedy appeal, albeit after filing the present petition. (Dobovich Decl., Ex. 2, Dkt. No. 9-3 at 11.) The Court expects the BOP is now following its Opinion in Goodman. Moreover, Respondent's opposition to the petition for writ of habeas corpus now presents a new issue of statutory construction.

11

on statutory construction") (citing <u>Harris v. Martin</u>, 792 F.2d 52, 54 n. 2 (3d Cir. 1986)).

    B.   <u>Statutory Construction</u>

    1.   *Relevant provisions of the First Step Act*

"The First Step Act, Pub. L. No. 115-015, 132 Stat. 015 (2018), signed into law on December 21, 2018, provides comprehensive federal criminal justice reform by, <u>inter</u> <u>alia</u>, creating a new risk and needs assessment system to provide appropriate programming for prisoners…." <u>Musgrove v. Ortiz</u>, No. CV 19-5222 (NLH), 2019 WL 2240563, at *2 (D.N.J. May 24, 2019). The risk and needs assessment system was created pursuant to 18 U.S.C. § 3632:

> (a) In general.--Not later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice website a risk and needs assessment system (referred to in this subchapter as the "System"), which shall be used to—
>
> (1) determine the recidivism risk of each prisoner as part of the intake process, and classify each prisoner as having minimum, low, medium, or high risk for recidivism;
>
> (2) assess and determine, to the extent practicable, the risk of violent or serious misconduct of each prisoner;
>
> (3) determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such

programming accordingly, and based on the prisoner's specific criminogenic needs, and in accordance with subsection (b);

(4) reassess the recidivism risk of each prisoner periodically, based on factors including indicators of progress, and of regression, that are dynamic and that can reasonably be expected to change while in prison;

(5) reassign the prisoner to appropriate evidence-based recidivism reduction programs or productive activities based on the revised determination to ensure that—

    (A) all prisoners at each risk level have a meaningful opportunity to reduce their classification during the period of incarceration;

    (B) to address the specific criminogenic needs of the prisoner; and

    (C) all prisoners are able to successfully participate in such programs;

(6) determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities in accordance with subsection (e);

(7) determine when a prisoner is ready to transfer into prerelease custody or supervised release in accordance with section 3624; and

(8) determine the appropriate use of audio technology for program course materials with an understanding of dyslexia.

In carrying out this subsection, the Attorney General may use existing risk and needs assessment tools, as appropriate.

13

(b) Assignment of evidence-based recidivism reduction programs.--The System shall provide guidance on the type, amount, and intensity of evidence-based recidivism reduction programming and productive activities that shall be assigned for each prisoner, including—

    (1) programs in which the Bureau of Prisons shall assign the prisoner to participate, according to the prisoner's specific criminogenic needs; and

    (2) information on the best ways that the Bureau of Prisons can tailor the programs to the specific criminogenic needs of each prisoner so as to most effectively lower each prisoner's risk of recidivism.

. . .

(d) Evidence-based recidivism reduction program incentives and productive activities rewards.--The System shall provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs as follows:

. . .

    (4) Time credits.—

        (A) In general.--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:

            (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

(B) Availability.--A prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed—

(i) prior to the date of enactment of this subchapter; or

(ii) during official detention prior to the date that the prisoner's sentence commences under section 3585(a).

(C) Application of time credits toward prerelease custody or supervised release.--Time credits earned under this paragraph by prisoners who successfully participate in recidivism reduction programs or productive activities shall be applied toward time in prerelease custody or supervised release. The Director of the Bureau of Prisons shall transfer eligible prisoners, as determined under section 3624(g), into prerelease custody or supervised release.

2.  *Standard of Law*

The starting point for statutory construction is that "words generally should be 'interpreted as taking their ordinary, contemporary, common meaning ... at the time Congress enacted the

statute.'" Wisconsin Cent. Ltd. v. United States, 138 S. Ct. 2067, 2074 (2018) (quoting Perrin v. U.S., 444 U.S. 37, 42 (1979)). Courts must also bear in mind the "'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" Util. Air Regulatory Grp. v. E.P.A., 573 U.S. 302, 320 (2014) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000)). "When the words of a statute are unambiguous … judicial inquiry is complete." Connecticut Nat. Bank v. Germain, 503 U.S. 249, 254 (1992) (quotation omitted). Agencies exercise discretion only in the interstices created by statutory silence or ambiguity; they must always 'give effect to the unambiguously expressed intent of Congress.'" Util. Air Regulatory Grp., 573 U.S. at 326 (quoting National Assn. of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 665 (2007) (quoting Chevron, U.S.A, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984)). "If a statute is ambiguous, and if the implementing agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs., 545 U.S. 967, 980 (2005) (citing Chevron, 467 U.S. at 843–844, and n. 11)). With these principles in mind, the Court turns to the statutory language.

3.   *Analysis*

As an initial matter, it is noteworthy that Respondent does not assert, as the BOP did in response to Petitioner's administrative remedy request and appeal, that Time Credits earned under the FSA will not be applied until January 15, 2022, the date upon which the risk and needs assessment system must be fully implemented.  The disputed issues here, then, are whether Petitioner completed approved EBRR programs and PAs during the relevant period, and if so, how are Time Credits calculated to give effect to the statute.

a.   *When do Time Credit incentives for EBRR programs and productive activities begin*

First, the Court must determine when prisoners can begin to earn incentives for participating in EBRR programs and PAs under the FSA. The statute provides that "[a] prisoner may not earn time credits … for an evidence-based recidivism reduction program that the prisoner successfully completed … prior to the date of enactment of this subchapter…." 18 U.S.C. 3632(d)(4)(B)(i). The phrase "this subchapter" refers to subchapter D, the risk and needs assessment system.  Subchapter D begins with the following provision:

> (a) In general.--Not later than 210 days after the date of enactment of this subchapter, the Attorney General, in consultation with the Independent Review Committee authorized by the First Step Act of 2018, shall develop and release publicly on the Department of Justice

> website a risk and needs assessment system
> (referred to in this subchapter as the
> "System")….

18 U.S.C. § 3632(a).

Respondent agrees that subchapter D was enacted on December 21, 2018, the effective date of the FSA.[7] Yet, Respondent urges the Court to interpret "the date of enactment of this subchapter" in § 3632(d)(4)(B)(i) to mean January 15, 2020, as the BOP has proposed, pending public comment for 28 C.F.R. § 523.42(d)(1)). (Surreply, Dkt. No. 14 at 2, n. 1, citing 85 Fed. Reg. at 75272.) Respondent relies on another provision of the FSA for its interpretation. Under 18 U.S.C. § 3621(h)(1)(A), the BOP was not required to "complete the initial intake risk and needs assessment for each prisoner … and begin to assign prisoners to appropriate evidence-based recidivism reduction programs based on that determination" to wit, until 180 days after development and public release of the system, January 15, 2020.

The Court begins, as it must, with the ordinary meaning of "the date of enactment of this subchapter" in § 3632(d)(4)(B)(i). Enactment means "the action or process of making into law." ENACTMENT, Black's Law Dictionary (11th ed. 2019). The FSA was enacted on December 21, 2018, and nothing in subchapter D indicates

---

[7] See Answer (Dkt. No. 9 at 3) ("As noted above, the First Step Act required the Attorney General to develop a risk and needs assessment system within 210 days of the law's enactment" citing 18 U.S.C. § 3632(a)).

a different effective date for the subchapter. Additionally, the same phrase, "the date of enactment of this subchapter," appears in subdivision (a); "[n]ot later than 210 days after the date of enactment of this subchapter" the BOP "shall develop and release publicly … a risk and needs assessment system." Two-hundred and ten days after December 21, 2018, the date the FSA was enacted, is July 19, 2019. There is no dispute that July 19, 2019 was the deadline for the BOP "to develop and release publicly on the Department of Justice website a risk and needs assessment system." See Goodman, No. CV 20-7582 (RMB), 2020 WL 5015613, at *3.[8]

The Court finds no indication in the statute that the ordinary meaning of "enactment of this subchapter," in subsection (d) should not be consistent with the same phrase used in subsection (a). Both subsections are within subchapter D and subsection (a) unambiguously refers to December 21, 2018 as the date of enactment of subchapter D. See Atl. Cleaners & Dyers v. United States, 286 U.S. 427, 433 (1932) (stating that there is a rebuttable presumption "that identical words used in different parts of the same act are intended to have the same meaning") (citation

---

[8] See also Department Of Justice Announces the Release of 3,100 Inmates Under First Step Act, Publishes Risk And Needs Assessment System (2019), available at https://www.justice.gov/opa/pr/department-justice-announces-release-3100-inmates-under-first-step-act-publishes-risk-and (last visited February 1, 2021).

omitted). Thus, 18 U.S.C. § 3632(d)(4)(B)(i) unambiguously directs that "[a] prisoner may not earn time credits … for an evidence-based recidivism reduction program that the prisoner successfully completed … prior to" December 21, 2018. The Court, thus, need not engage in a _Chevron_ analysis of 28 C.F.R. § 523.42(d)(1). "[T]he _Chevron_ Court explained that deference is not due unless a 'court, employing traditional tools of statutory construction,' is left with an unresolved ambiguity." _Epic Sys. Corp. v. Lewis_, 138 S. Ct. 1612, 1630 (2018) (quoting _Chevron_, 467 U.S. at 843, n. 9.)) There is no ambiguity here. As a result, if Petitioner successfully completed an EBRR program or PA pursuant to the FSA on or after December 21, 2018, he is entitled to earn Time Credits. The question remains how to determine when an inmate successfully completed an EBRR or PA that is eligible for Time Credits.

> b.   _EBRR programs and productive activities eligible for Time credits as an incentive for completion_

Pursuant to 18 U.S.C. § 3632(a)(3)-(5), the BOP must determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner and assign each prisoner to such programming accordingly, and reassess and reassign each prisoner periodically to address their specific criminogenic needs, and further

> (6) determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs

or productive activities in accordance with subsection (e)[.]

18 U.S.C. § 3632(a)(6). Subsection (e) provides for reductions in rewards and incentives earned pursuant to subsection (d)(4), which provides as follows:

> (d) Evidence-based recidivism reduction program incentives and productive activities rewards.--The System shall provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs as follows:
>
> …
>
> (4) Time credits.—
>
>> (A) In general.--A prisoner, except for an ineligible prisoner under subparagraph (D), who successfully completes evidence-based recidivism reduction programming or productive activities, shall earn time credits as follows:
>>
>>> (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.
>>>
>>> (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

In sum, the FSA requires the BOP to determine the type and amount of EBRR programming that is appropriate for each prisoner

based on their specific criminogenic needs, to assign each prisoner to such programming, and to reassess and reassign each prisoner periodically. A prisoner who successfully completes the EBRR programs and productive activities to which he or she has been assigned earns Time Credits as set forth in § 3632(d)(4)(A). Thus, to determine Petitioner's eligibility for Time Credits, the Court must determine the type and amount of programming the BOP determined was appropriate for Petitioner initially and upon reassessment, and which of those programs and activities Petitioner successfully completed.

Respondent submitted the Declaration of Christopher Palm, Petitioner's Case Manager, to explain Petitioner's assignment to EBRR programs and PAs pursuant to the FSA.[9] Exhibit 3 to the Palm Declaration is a BOP Memorandum ("the BOP Memorandum"), dated November 8, 2019, which describes how BOP staff, using the PATTERN tool, "add needs information to the risk and needs assessment process and refer inmates to appropriate programs." (Palm Decl., Ex. 3 (Dkt. No. 9-5 at 2.) According to the BOP Memorandum:

> Attachment B [Criminogenic Need Areas and Associated Programs] provides information about which programs address a specific need. Staff can use this chart to assist in setting goals and recommending programs. Inmates may continue to volunteer for programs not listed in the chart, but only the attached programs

---

[9] See "Palm Decl." (Dkt. No. 9-4) and "Suppl. Palm Decl." (Dkt. No. 17-1.)

>will count for the purposes of addressing
>identified needs.

(Palm Decl., Ex. 3 (Dkt. No. 9-5 at 3.) The BOP Memorandum also

states:

>Many of the needs assessments described in
>this memo are already completed on all inmates
>at intake, and staff are not required to
>reassess those needs at this time.

(Id.) The "substance abuse need" is an example of a situation where

staff were not required to reassess a prisoner's needs under

PATTERN because the BOP Memorandum states "Unit Management staff

are currently responsible for assessing the substance abuse need

at intake via the DRUG ED SENTRY assignment. No change is required

for this process." (Id. at 4.) As per the Memorandum, "Unit

Management staff [are also responsible for assessing

family/parenting…. The family/parenting information will be

automatically drawn from information already loaded into Insight."

(Id.)

Like the "substance abuse" and "family/parenting" need

categories, there was no change required for how Education staff

determined whether a prisoner had an "education need," also

determined upon intake.[10] Therefore, in keeping with the BOP

Memorandum, education staff was not required to reassess a

_____

[10] See the BOP Memorandum (Palm Decl., Ex. 3 (Dkt. No. 9-5 at 3.)
("Many of the needs assessments described in this memo are already
completed on all inmates at intake, and staff are not required to
reassess those needs at this time.")

prisoner's education need under PATTERN. (Id. at 4.) Education staff also became responsible for determining "work needs" under PATTERN, using a new tool. (Palm Decl., Ex. 3 (Dkt. No. 9-5 at 4.) Needs in the category of "recreation/fitness/leisure" are determined by Health Services staff "via the history and physical performed at intake. They also assign the Chronic Care Clinic code to determine recreation/fitness/leisure needs. They will be required to formally notify Unit Management if there is a medical need for specific programs in these areas." (Id. at 4-5.) Finally, the BOP Memorandum provides that "Correctional Services staff are not required to collect needs assessment information[,]" but may provide input. (Id. at 5.)

Petitioner was found eligible to earn Time Credits under 18 U.S.C. § 3632(d)(4)(B) on December 2, 2019, because he did not have a disqualifying offense. (Palm Decl. ¶3, Dkt. No. 9-4; Ex. 3, Dkt. No. 9-5 at 63.) On December 11, 2019, BOP staff conducted Petitioner's risk and needs assessment under the FSA and determined he had a need for EBRR programs and PAs in the categories of anger/hostility, work, medical, recreation/leisure/fitness, and parenting. (Palm Decl. ¶6, Ex. 4 at 1-2, Dkt. No. 9-5 at 65-66.) Petitioner's "Inmate Profile" shows each category of FSA "need" as follows: anger/hostility 1/2/2020; medical 10/19/2020; rec/leisure/fitness 10/19/2020; work 7/31/2020; and anger management 6/19/2020. (See e.g. Palm Decl., Ex. 5, Dkt. No. 9-5 at

65-66.) The effective date for Petitioner's parenting program is February 24, 2020. (Palm Decl. ¶6, Ex. 4 at 2, Dkt. No. 9-5 at 66.) The Court further notes that the <u>First Step Act Approved Programs Guide</u> states "[i]nmates are recommended to enroll in the approved programs designed to address their individual needs." (Palm Decl., Ex. 2, Dkt. No. 9-5 at 18.) This suggests that inmates can enroll in approved programs in categories to meet the "needs" they have under the FSA, without waiting to be assigned to a specific program by staff.

Time Credits are earned only when an inmate successfully completes one of the BOP-approved EBRR programs or PAs related to one of the particular needs assigned to that inmate. (Palm Decl. ¶7, Dkt. No. 9-4.) The BOP has determined, "when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities."[11] Time Credits will be awarded when a prisoner completes EBRR programs or PAs as set forth in the <u>First Step Act Approved Programs Guide</u>. (Palm Decl., Ex. 2 at 4-42, Dkt. No. 9-5 at 17-61.) Based on Petitioner's needs as reflected in his risk and needs assessment and reassessment, the following EBRRs and PAs listed in <u>The First Step Act Approved Programs Guide</u> may meet his specific needs and provide him the opportunity to earn Time Credits:

---

[11] <u>See</u> 18 U.S.C. § 3632(a)(6).

(1) anger/hostility —— [EBRRs] Anger Management, and [PAs] Beyond Violence: A Prevention Program for Criminal Justice Involved Women; START Now,

(2) work —— [EBRRs] Federal Prison Industries; Female Integrated Treatment; Occupational Education Programs, and [PAs] English-as-a Second Language; Federal Prison Industries (FPI) Lean Basics Training; Foundation; Hooked on Phonics; Key Train for ACT Work Keys; Supported Employment; Unit Management Psychology Services,

(3) medical —— [EBRRs] none, and [PAs] Arthritis Foundation Walk with Ease; Brain Health As You age: You can Make A Difference!; Getting to Know your Healthy Aging Body; Healthy Steps for Older Adults; Living a Health Life with Chronic Conditions; Managing Your Diabetes; National Diabetes Prevention Program; Talking with Your Doctor - Guide for Older Adults

(4) recreation/leisure/fitness —— [EBRRs] none, and [PAs] A Healthier Me in the BOP; A Matter of Balance; Arthritis Foundation Walk with Ease; Brain Health As You age: You can Make A Difference!; Getting to Know your Healthy Aging Body; Health and Wellness Throughout the Lifespan; Healthy Steps for Older Adults; Living a Health Life with Chronic Conditions; Managing Your Diabetes; National Diabetes Prevention Program; Service Fit; Square One: Essentials for Women; Talking with Your Doctor - Guide for Older Adults,

(5) parenting —— [EBRRs]Assert Yourself for Female Offenders, Life Connections Program; National Parenting from Prison Program Phases 1 & 2: Preparing for Motherhood, Partners in Parenting, Parenting Children With Special Needs, To Parent or Not to Parent, Parenting Inside Out, Inside Out Dad, Mothers of Adolescents, Parenting a Second Time, Around (PASTA); Threshold Program, and [PAs] Pu'a

Foundation    Reentry    Program;    Women's
Relationships.

Petitioner seeks Time Credits for the programs and activities
reflected in his Inmate Education Data and Summary Reentry Plan
Progress Report. (Petr's Ex. 1, Dkt. No. 1-1 at 2; Petr's Ex. 2,
Dkt. No. 1-1 at 4-7.) In Petitioner's Inmate Education Data, only
the Threshold Program is approved for Time Credit based on a need
for parenting.[12] Petitioner started this program on June 1, 2019
and completed it on February 1, 2020. (Petr's Ex. 1, Dkt. No. 1-1
at 2.) According to the BOP Memorandum discussed above, "[t]he
family/parenting information will be automatically drawn from
information already loaded into Insight." Therefore, if Petitioner
had a need for parenting when his needs were assessed based on
review of the information loaded into Insight on December 11, 2019,
he is entitled to Time Credit upon successful completion of the
Threshold Program. Further, Petitioner was assigned to the
Parenting Inside and Out program effective February 24, 2020 (Palm
Decl., Ex. 4, Dkt. No. 9-5 at 66), a program which is approved for
Time Credits in the First Step Act Approved Programs Guide, but

---

[12] Petitioner completed "Parenting Program Spanish" between the
dates of October 1, 2019 and December 19, 2019. (Palm Decl., Ex.
4, Dkt. No. 9-5 at 65.)

27

Petitioner will not earn Time Credit until completion of the program.[13]

Petitioner's Summary Reentry Plan Progress Report of January 3, 2020 shows that he had a work assignment on January 29, 2020. (Petr's Ex. 2, Dkt. No. 1-1 at 4.) However, the effective date of Petitioner's need for "work" is July 31, 2020, based on the loss of his prison job due to a disciplinary infraction. (Palm Decl., Dkt. No. 9-4; Exhibits, 4, 7 and 8, Dkt. No. 9-5.) The First Step Act Approved Programs Guide indicates that an inmate with a work assignment in the FPI [UNICOR] program can earn 500 hours of EBRR program credits. (Palm Decl., Ex. 2 at 14, Dkt. No. 9-5 at 30.) Assuming Petitioner had an FPI work assignment effective July 31, 2020, he began earning Time Credit for his work on that date, subject to successful completion of 500 hours. Petitioner is not entitled to Time Credit for work completed prior to the determination that he had a "need" for such work under the FSA risk and need assessment system.

The "need" for work can also be met by completing programs within the BOP's Occupational Education Program and Post-Secondary Education Program. (Palm Decl., Ex. 2 at 22, Dkt. No. 9-5 at 38.) Petitioner completed courses that may fall within these programs

---

[13] Petitioner completed Phase I of this program. (Answer, Dkt. No. 9 at 3; Palm Decl., Ex. 5, Dkt. No. 9-5 at 68.) When he completes Phase II, he will be entitled to Time Credit for the entire program.

in January and February 2020. However, Petitioner did not have a "need" for work under the FSA prior to July 31, 2020. His need arose from loss of his UNICOR job due to a disciplinary infraction. (Palm Decl., Dkt. No. 9-4; Exhibits, 4, 7 and 8, Dkt. No. 9-5.) Therefore, he is not entitled to Time Credits for programs completed prior to his assessment of a need in the work category.

In the category of anger/hostility, the record shows that Petitioner was placed on a wait list for an Anger Management course that is eligible for Time Credits upon successful completion. (Palm Decl., Ex. 4, Dkt. No. 9-5 at 66.) The record does not establish that Petitioner has successfully completed the course. Petitioner also seeks credit for completing the Criminal Thinking Program. (Reply, Dkt. No. 10 at 5.) The Criminal Thinking Program meets the FSA need category of "antisocial peers." (Palm Decl., Ex. 4, Dkt. No. 9-5 at 9.) Petitioner was not assessed with a need in this category; therefore, he is not entitled to earn Time Credits for completing the Criminal Thinking Program. In the categories of "medical" and "recreation/leisure/fitness," the effective date for Petitioner's participation in programs is October 19, 2020, which is after Petitioner filed the present petition. (Id.) The record does not establish whether Petitioner has since completed those programs.

Finally, Petitioner challenges the BOP's determination that he does not have a "need" for substance abuse programs or

29

education. According to the records submitted to the Court, Petitioner completed Drug Education on July 15, 2019, and nonresidential drug treatment on July 11, 2019. (Palm Decl., Ex. 4, Dkt. No. 9-5 at 65.) Respondent argues that Petitioner did not qualify for Time Credits for the drug program he completed in July 2019 because the BOP has interpreted "the First Step Act to only make available Earned Time Credits for EBRR programming and productive activities assigned and completed after January 15, 2020." For the reasons discussed above, 18 U.S.C. § 3632(d)(4)(B)(i) unambiguously provides that "a prisoner may not earn time credits under this paragraph for an evidence-based recidivism reduction program that the prisoner successfully completed … prior to" December 21, 2018. As discussed above, the Court is not required to give deference to the BOP's interpretation of § 3632(d)(4)(B)(i) or its proposed regulation. Petitioner may not receive Time Credits for approved programs he completed prior to December 21, 2018. Moreover, pursuant to the BOP Memorandum, Unit Management was not required to reassess Petitioner's need for substance abuse programs when it performed his risk and needs assessment on December 11, 2019, because the assessment tool had not changed after the assessment was performed upon intake. Thus, if Petitioner had a substance abuse need upon intake, and he successfully completed an approved program after December 21, 2018, he is entitled to credit for the hours completed.

30

Prior to January 15, 2020, Petitioner was assigned to a substance abuse program that appears in the First Step Act Approved Programs Guide, nonresidential drug treatment, which he completed on December 11, 2019. (Surreply, Dkt. No. 14 at 2, n.1 citing Palm Decl., Ex. 4 (Inmate Profile) at 1 ("NRES DRUG TMT/COMPLETE 12/11/2019")). According to the First Step Act Approved Programs Guide, the Non-residential Drug Abuse Program "NRDAP" is a 24-hour approved EBRR program. (Palm Decl., Ex. 2; Dkt. No. 9-5 at 37.) Assuming, as it appears from the record, that Petitioner was found to have a need for substance abuse treatment upon intake, he is entitled to earn credit for the hours he successfully participated in the program upon his completion of the program on December 11, 2019. On July 15, 2019, Petitioner also completed a drug education program. (Palm Decl. Ex. 4; Dkt. No. 9-5 at 65.) If this drug education program is described in the First Step Act Approved Programs Guide, Petitioner is also entitled to credit for the number of hours leading to successful completion of the program. Finally, Alcoholics Anonymous is an approved PA in the First Step Act Approved Programs Guide, a 50-hour program. (Palm Decl., Ex. 2, Dkt. No. 9-5 at 11; Ex. 4, Dkt. No. 9-5 at 49) If Petitioner successfully completed Alcoholics Anonymous after December 21, 2018, he is entitled to credit for 50 hours.

In the same vein, if Petitioner was assessed with a need in the category of "education" upon intake, and he successfully

completed any education EBRR programs or PAs that appear in the First Step Act Approved Programs Guide after December 21, 2018, he is entitled to credit for the hours of programming that he successfully completed. The Court cannot conclusively determine from the record whether Petitioner was assessed with a need for education upon intake, and it does not appear that he successfully completed any education programs that appear in the First Step Act Approved Programs Guide after December 21, 2018. The Court will direct Respondent to supplement the record with the information necessary to make this determination.

The Court, having established the timeframe for earning Time Credits, and the programs eligible for earning Time Credits, turns to the calculation of Time Credits earned under the FSA.

c.   *Calculation of Time Credits to be awarded as incentives under the First Step Act*

The statutory provision of the FSA governing the number of Time Credits to be awarded for successful completion of appropriate EBRR programs and PAs states:

> (i) A prisoner shall earn 10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities.

> (ii) A prisoner determined by the Bureau of Prisons to be at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn an additional 5 days of time credits for every 30 days of successful

> participation in evidence-based recidivism
> reduction programming or productive
> activities.

18 U.S.C. § 3621(d)(4)(A)(i, ii). Petitioner contends that he should earn 10 days of Time Credits for every 30 days in which he successfully participated in an EBRR program or PA, regardless of the length of time in which he participated in any given day.[14] The BOP has interpreted "day" as eight hours, thus, 30 days is 240 hours of successful participation in an EBRR program or PA. Pursuant to the rules of statutory construction, the Court must first turn to the ordinary meaning of the word. The definition of "day" in Black's Law Dictionary is:

> 1. Any 24-hour period; … 2. The period between the rising and the setting of the sun … 3. Sunlight … 4. The period when the sun is above the horizon, along with the period in the early morning and late evening when a person's face is discernible. 5. Any specified time period, esp. as distinguished from other periods[.]

DAY, Black's Law Dictionary (11th ed. 2019). Also relevant is the ordinary meaning of the word "participation." Participation is

---

[14] The parties have not addressed the meaning of "10 days of time credits" in 18 U.S.C. § 3632((d)(4)(A)(i). Intuitively, "day" would have the same meaning within the same sentence. In context of the overall statute, however, days of Time Credits are subtracted from RRC placement, home confinement or supervised release and are more likely calculated as 24-hours periods; whereas "30 days of successful participation" in EBRR programs and PAs are more likely dependent on the number of hours spent participating in an EBRR program or PA on a given day. The meaning of "10 days of time credits" however, is not before the Court at this time.

"[t]he act of taking part in something, such as a partnership, a crime, or a trial." PARTICIPATION, Black's Law Dictionary (11th ed. 2019).

As Respondent suggests, the BOP could have interpreted "day" as a 24-hour period, and found 24 hours to equal one day of participation. The BOP did not adopt this approach because it would provide too little credit to incentivize prisoners to participate in EBRR programs and productive activities. "[A]ny specified time period" is also an ordinary meaning of the word "day." The BOP defined "day" as a specified time period, 8-hours. This was based on an average work day. The BOP's interpretation provides a greater incentive for prisoners to participate than would a 24-hour day, as prisoners could earn 10 days of Time Credits with only 240 hours of successful participation (30 days) in EBRR programs and PAs. Given that there are conflicting ordinary meanings of the word "day," 24 hours or any specified time period, this provision of the statute is ambiguous. "'[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" Egan v. Delaware River Port Auth., 851 F.3d 263, 269 (3d Cir. 2017) (quoting Chevron, 467 U.S. at 842-43.)) An agency's interpretation is reasonable when it is consistent with the purposes of the statute. Id.

The express purpose of awarding Time Credits under the FSA is to "provide incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs." 18 U.S.C. § 3632(d). The FSA requires the BOP to "determine the type and amount of evidence-based recidivism reduction programming that is appropriate for each prisoner," 18 U.S.C. § 3632(a)(3), and to "determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities…." Id., § 3632(a)(6). The BOP's interpretation of "day" as an 8-hour workday is consistent with the statutory delegation of the power to "determine when to provide incentives and rewards for successful participation in evidence-based recidivism reduction programs or productive activities…." 18 U.S.C. § 3632(a)(6). Under the BOP's interpretation of "day" prisoners receive equal credit based on the number of hours of approved EBRR programs or PAs successfully completed in a category in which the prisoner has a need. To interpret "day" as suggested by Petitioner, a prisoner who took a one-hour vocational class would receive the same number of hours toward a need for "work" as a prisoner who worked eight hours in a UNICOR work assignment.

The BOP's interpretation of a "day" is reasonable because it incentivizes approved EBRR programs and PAs equally, dependent on the total number of hours of participation. Taking the example above, by counting each day that a prisoner participated in any

35

approved program toward the 30-day participation required to earn 10 days of Time Credits would incentivize a prisoner to participate in only those programs that require fewer hours per day. For these reasons, the Court finds the BOP's interpretation of "30 days of successful participation in evidence-based recidivism reduction programming or productive activities" in § 3621(d)(4)(A)(i) to mean 240 hours of participation is consistent with the FSA's goal of "provid[ing] incentives and rewards for prisoners to participate in and complete evidence-based recidivism reduction programs." 18 U.S.C.A. § 3632(d). Therefore, Petitioner is entitled to 10 days of Time Credit for every 240 hours of successful participation in approved EBRR programs and PAs. 18 U.S.C. § 3621(d)(4)(A)(i).

The FSA also provides for an additional 5-day Time Credit for thirty days of successful participation in EBRR programs and PAs, but to receive this incentive, a prisoner must not increase his or her risk of recidivism over two consecutive assessments. 18 U.S.C. § 3621(d)(4)(A)(ii). Petitioner was not eligible for this incentive at the time he filed his habeas petition because when the last reassessment of his risk of recidivism was performed in May 2020, he increased from a minimum score to a low score. (Palm Decl. ¶4, Dkt. No. 9-4; Ex. 3, Dkt. No. 9-5 at 63.)

Petitioner's projected release date, assuming good conduct time, is August 21, 2021. Pursuant to 18 U.S.C. § 3624(g)(1)(A),

a prisoner who "has earned time credits under the risk and needs assessment system … in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment" may be released to a residential reentry center ("RRC"), home confinement or supervised release, subject to the provisions under § 3624(g)(1)(B-D) and (g)(2, 3). For Petitioner to be released on February 1, 2021, for example, he would need to earn 201 days of Time Credits. This equates to approximately 2400 hours of successful participation in EBRR programs and PAs. Although it does not appear that Petitioner has earned sufficient Time Credits for immediate release, supplementation of the record is necessary to calculate how many Time Credits Petitioner has earned to date.

III. CONCLUSION

The Court finds that Petitioner is entitled to Time Credits as discussed above, but requires supplementation of the record to determine the total number of Time Credits Petitioner has earned. Respondent shall calculate Petitioner's Time Credits consistent with this Court's Opinion, providing the date when Petitioner was assessed with each category of "need" under the FSA [including needs assessed upon intake that were not required to be reassessed on December 11, 2019], and Petitioner's start date and completion date of all approved EBRR programs and PAs completed after December 21, 2018, for which he had a need. The Court will reserve determination of whether Petitioner is entitled to a writ of habeas

corpus. If upon further review, as directed, Respondent concludes that habeas relief is warranted, Respondent shall immediately advise the Court.

An appropriate Order follows.

Date: **February 4, 2021**

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **UNITED STATES DISTRICT JUDGE**